## Braunschweiger's Estate.

Argued May 26, 1936.   Before KEPHART, C. J., SCHAF-FER, MAXEY, LINN, STERN and BARNES, JJ.

W. D. *Gallup*, with him *F. D. Gallup* and *E. G. Potter*, of *Gallup, Potter & Gallup*, for appellant.

C. *Leo Sutton*, of *Bell, Truscott, Henry & Sutton*, with him *Wilmer G. Williams*, of *Chambers & Williams*, for appellee.

OPINION BY MR. CHIEF JUSTICE KEPHART, June 26, 1936:

Sarah L. Braunschweiger, by her will, appointed Ida Weill executrix; she qualified in March, 1929. Testatrix' will directed the residue of her estate be distributed equally among her brothers and sister. One of her brothers, Samuel, died in 1930, naming his daughter Adeline executrix of his will and residuary legatee. She filed exceptions to Ida Weill's account as executrix of Sarah L. Braunschweiger's estate. The account was referred to an auditor whose report was confirmed absolutely. It showed $22,417 due the Estate of Samuel, and that Adeline was entitled to her father's interest.

On June 6, 1932, Adeline filed a petition under section 18 of the Orphans' Court Act of 1917, P. L. 363, for a writ of attachment against Ida Weill, executrix, for failing to pay the sum awarded to her father's estate from the Estate of Sarah L. Braunschweiger. Ida contended that there had been a family settlement which superseded the audit. Judge BOUTON, then presiding, after hearing and considering all the testimony adduced at the audit and other matters brought before him, overruled this contention and on October 18, 1932, directed a writ of attachment against Ida Weill. The writ issued that day but, owing to Ida's physical condition, that and an alias writ were not served. Counsel for Adeline moved for a pluries writ before Judge HUBBARD, Judge

Bouton's successor. Ida's counsel answered she was without means and could not pay.

On May 29, 1934, a second hearing was held by Judge Hubbard. For a reason that does not appear, the matter was held in abeyance from that time until April 14, 1936, when counsel for Ida moved to quash the attachment. Judge Hubbard two days later filed an opinion dissolving the former attachment for want of jurisdiction in the court which ordered it. The court below found that while the auditor reported the sum of $21,373 due to Samuel, this was reduced by payments of $3,944.48, leaving a balance due of $17,428.52, but that it was due subject to the family agreement executed as of July 1, 1929, and not under the terms of the will.

The agreement signed by Adeline's father stated in substance that "whereas Samuel was awarded $21,373, less $300, that sum shall be taken in consideration as final settlement of all monies due . . . from the above estate." The agreement then provided "I further agree to leave the sum of $——— with the executrix, Ida Weill, for any final deductions to be made against the share that goes to me." Judge Hubbard found that since executrix Ida had distributed the awards made by the auditor under this family settlement, by which Adeline was bound, she could make no claim for her father's share except under its terms. He held that the court was therefore without jurisdiction to order the pluries writ and dissolved the proceedings.

Since 1713, when the Orphans' Court was first established in Pennsylvania, it has had the power to enforce its lawful decrees by contempt proceedings. Section 8 of the Act of March 27, 1712-1713, 1 Sm. L. 86, ch. 197, provided that this branch of the judiciary "may enforce obedience to their warrants, sentences and orders concerning any matter or thing cognizable in the same courts, by imprisonment of body or sequestration of lands or goods, as fully as any court of equity may or can do." In *Bowman v. Herr Ex'rs*, 1 P. & W. 282

(1830), doubt was expressed by one of the litigants as to the power of the Orphans' Court to enforce its decrees, and it was urged that resort must be had to the common law courts. This court held that there was full and plenary authority conferred upon that tribunal to compel compliance with its decrees by attachment of the person or goods of those over whom it had jurisdiction. The Orphans' Court, although of statutory origin, possesses within its defined jurisdictional scope all of the powers inherently attaching to a court of equity. It must have jurisdiction over person and subject-matter to enforce a decree against the person, but, when it has these requisites, its power is unquestioned.

The section of the Act of 1712-1713 above quoted was substantially reënacted in section 57, clause 11, of the Act of March 29, 1832, P. L. 190, with the addition of a remedy by the writ of fieri facias. See *Shollenberger's Appeal,* 21 Pa. 337; *Black v. Black,* 34 Pa. 354. In *Tome's Appeal,* 50 Pa. 285, we affirmed a decree of the Orphans' Court imprisoning a dismissed executor for contempt in squandering money of the estate which he had been ordered to pay over to his successor, and fully discussed the nature of this power. Attachment for refusal to pay costs imposed upon an accountant was upheld in *Hoffman's Estate,* 10 Pa. Superior 113. See also *Patton's Estate,* 19 Pa. Superior 545, in which it is pointed out, however, that such order will issue only upon application of an interested party.

These powers are expressly confirmed by the Orphans' Court Act of 1917, and the doctrine of our earlier decisions remains in full force under it.

Appellee urges that the auditor's report, finally confirmed by a decree of court, merely represented the family agreement which the auditor found as a fact, and in accordance with which he modified the order of distribution. Family settlements are much preferred by the law: *Weaver v. Roth,* 105 Pa. 408; *Walworth v. Abel,* 52 Pa. 370; *Palethorp's Estate,* 168 Pa. 98. But they

must be clearly established. See *Patterson's Appeal,* 116 Pa. 8. If the existence or validity of any such settlement is not an open question, it is not necessary to consider evidence relating to it apart from the agreement itself. This family settlement, on which testimony had been taken before the auditor, together with other matters relating thereto, was considered by Judge Bouton in disposing of the original petition for attachment.

In his opinion and findings that Judge stated: "The auditor's report having been confirmed absolutely, his findings became a decree of the Orphans' Court and cannot be discharged by any action of either party. We do not believe, however, that the learned auditor, in his findings as to a family settlement, meant that the agreements entered into amounted to what is known as a family settlement such as is recognized by the courts as being a final disposition of the case and relieving the executrix from making payments to the residuary legatees of the balance in her hands due under the terms of the will to such legatees."

The decree entered by Judge Bouton was a final one from which an appeal could have been taken. Appellee did not see fit to do this. It bound the parties as it did the court below in subsequent matters based thereon. Apart from this consideration the agreement here is in no sense such a family settlement as absolved this executrix from complying with the decree of the court directing this sum to be paid. It merely fixed definitely the rights of the parties on the basis of the auditor's report, but was not intended as a shield to protect her against the consequences of nonpayment.

Appellee, however, urges that as the court below refused to issue the pluries writ this court will not reverse its action unless there has been a palpable abuse of discretion. As Judge Bouton found the agreement in no wise supplanted the auditor's report, it would be an abuse of discretion to refuse to issue an order of attachment in an estate where the fiduciary is withholding

money ordered to be paid. We have not decided that we would permit the court below to refuse to grant an attachment where one should be issued as a matter of law. No case has been cited to us which goes to that extent. Usually this Court will not interfere with the findings of a court below based on sufficient evidence, awarding or refusing to award an attachment but, as stated in *Ross v. Dever*, 298 Pa. 146, this rule is subject to modification when a plain abuse of discretion appears. Such an abuse does appear when a fiduciary refuses under a decree of court to pay to a distributee his share of an estate which the former has in his possession. The court below was clearly in error in quashing the proceeding.

Its order is reversed and the writ is directed to issue.